IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RUBY SCOTT                                                                                          PLAINTIFF

V.                             NO. 4:24CV00272-KGB-PSH

MARTIN O'MALLEY,
COMMISSIONER of the
SOCIAL SECURITY ADMINISTRATION                                          DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.   Introduction:**

Plaintiff, Ruby Scott ("Ms. Scott"), filed an application for Title II disability and disability insurance benefits on November 18, 2021. (Tr. at 31). She filed an application for Title XVI supplement security income on the same day. *Id*. In both

1

applications, Ms. Scott alleged disability beginning on February 1, 2021. *Id*. The applications were denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") denied Ms. Scott's applications by written decision dated August 8, 2023. (Tr. at 31-39). On March 4, 2024, the Appeals Council, having considered new evidence provided by Ms. Scott, denied her request for review of the hearing decision. (Tr. at 2-6). This decision stands as the final decision of the Commissioner, and Ms. Scott has requested judicial review.

For the reasons stated below, this Court should affirm the ALJ's decision and enter judgment for Defendant.

## II.     **The Commissioner's Decision:**

The ALJ found that Ms. Scott meets the insured status requirement of the Social Security Act through December 31, 2025. (Tr. at 33). The ALJ next found that Ms. Scott had not engaged in substantial gainful activity since the alleged onset date of February 1, 2021.[1] *Id*. At Step Two, the ALJ found that Ms. Scott had the following severe impairments: degenerative disc disease of the lumbar spine,

---

[1] An ALJ must follow the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

obesity, and hypertension. *Id*.

After finding that Ms. Scott's impairments did not meet or equal a Listing,[2] the ALJ determined that Ms. Scott had the residual functional capacity ("RFC") to perform work at the light exertional level, with the additional limitation: she can no more than occasionally stoop, kneel, crouch, and crawl. (Tr. at 34).

The ALJ determined that Ms. Scott was unable to perform any past relevant work. (Tr. at 37). At Step Five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Scott's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, such as marker, power screwdriver operator, and router. (Tr. at 38-39). Thus, the ALJ found that Ms. Scott was not disabled. *Id*.

### III.  Discussion:

####   A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the

---

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Ms. Scott's Arguments on Appeal

Ms. Scott contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that the ALJ did properly consider Ms. Scott's alleged neck condition, including evidence submitted after the ALJ's decision.

Ms. Scott treated lumbar degenerative disc disease over the relevant time-period, and she experienced some improvement from treatment. (Tr. at 35). She now claims that a neck condition was disabling, but notably, she did not allege she had a chronic neck condition on her application paperwork (Tr. at 271). Ms. Scott rarely told her doctors she had any issues with her neck. She specifically stated at the hearing that her back pain was the only impairment that interfered with her ability to work. (Tr. at 54). No objective imaging from the relevant time-period showed neck problems. Physical examinations of Ms. Scott's neck were normal. (Tr. at 362, 399, 417, 429, 461). No provider placed any restrictions on Ms. Scott related to a neck problem.

At the May 10, 2023, hearing, Ms. Scott's attorney said that the record was complete. (Tr. at 48). However, after the ALJ's August 8, 2023, decision, Ms. Scott submitted results from a September 5, 2023, cervical MRI to the Appeals Council (Tr. at 17). It showed multilevel degenerative changes and canal stenosis of the

5

cervical spine. *Id*. But there is scant evidence showing diagnosis or treatment of cervical degeneration ***prior*** to the ALJ's decision, or at all during the relevant time-period of February 1, 2021 through August 8, 2023.

At an ER visit in October 2021, Ms. Scott did complain of pain from her shoulder and neck area down to her arm, but treatment records from that time discussed left arm and back pain, not neck pain. (Tr at 384-402). The doctor at the ER visit concluded that Ms. Scott's symptoms were unrelated to cervical nerve impingement, and Ms. Scott was discharged in stable condition. (Tr. at 402). There must be some evidence of symptoms, imaging, diagnosis, or treatment that restricts a claimant's functional abilities for an ALJ to find that a claimant has a severe impairment. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). In this case, there is simply no evidence suggesting a severe neck condition prior to the ALJ's decision date.

Ms. Scott also relies on a treatment note from Dr. Kathryn Nance, M.D., which she submitted with the September 5, 2023 MRI results. (Tr. at 19-22). The notes from the September 5, 2023 visit with Dr. Nance show that Ms. Scott reported back and neck pain in July 2023; however, she refused physical therapy because she was afraid it would hurt too much. (Tr. at 19-23). Ms. Scott told Dr. Nance that trigger point injections to her neck did not help. *Id*. Dr. Nance suggested NSAIDS

6

and Tylenol for Ms. Scott's back pain. *Id*. Again, this all happened at an appointment after the ALJ's decision issued. Dr. Nance did not reference any objective evidence of neck pain and physical examinations of the neck did not show severe conditions. Dr. Nance did not prescribe any aggressive treatment. And in the short medical record (less than 300 pages) there is no evidence of regular complaints of, or treatment for, neck pain. The failure to seek regular and continuing treatment contradicts allegations of disability. See *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

Ms. Scott argues that the state-agency reviewing medical experts' opinions from 2022 were flawed because the experts did not have the 2023 cervical MRI before them to consider. (Tr. 66-68, 82). Both experts suggested an RFC for light exertional work, which aligned with the evidence of minimal conservative treatment and Ms. Scott's abilities to perform a variety of daily activities. *Id*.; (Tr. at 35). Ms. Scott has not demonstrated that the September 2023 cervical MRI showing moderate degeneration would have changed that RFC determination, even if it had related to the relevant-time period. And the state agency medical experts made findings based on the evidence in the record at the time; they were not required to speculate about future evidence.

Ms. Scott requested that the Appeals Council review the ALJ's decision. (Tr.

7

at 217-218). As the Appeals Council reasoned, when faced with the September 2023 MRI, the MRI evidence did not relate to the period at issue and did not affect the decision about whether Ms. Scott was disabled on or before August 8, 2023.[3] (Tr. at 3). The Appeals Council properly discounted the new evidence for the reasons outlined above. That made the Administration's decision final and ripe for judicial review. The Court agrees that the ALJ's decision properly considered all of the relevant medical evidence for the proper time-period, and the new evidence would not change the outcome.

## III.   Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Scott was not disabled. The newly submitted evidence did not relate to the relevant time-period and, in any event, would not have changed the outcome of the case, given the lack of medical evidence related to neck pain. The case should be dismissed, with prejudice.

---

[3] "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

IT IS SO ORDERED this 20th day of August, 2024.

_____
UNITED STATES MAGISTRATE JUDGE